**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GARY CARTER,** | : | |
| **Plaintiff,** | : | **Case No. 2:01-CV-1230** |
| **v.** | : | **Judge Holschuh** |
| **YELLOW FREIGHT SYSTEM, INC.,** **et al.,** | : | **Magistrate Judge King** |
| | : | |
| **Defendants.** | : | |
| | : | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gary Carter brings this action under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), against his former employer, Yellow Freight System, Inc., ("Yellow"), alleging breach of his collective bargaining agreement and against his labor organization, Teamsters Local Union No. 413 ("Union"), alleging a breach of the Union's duty of fair representation.[1] This matter is currently before the Court on Plaintiff's three motions requesting, in the alternative: (1) that the Court reopen and dismiss the case, (2) that the Court enter a dismissal *nunc pro tunc*, or (3) that the Court grant relief pursuant to Rules 60 and/or 61 of the Federal Rules of Civil Procedure. (Doc. # 57).

---

[1]All other claims and defendants have been dismissed. Order (July 29, 2002); Memorandum and Order (July 26, 2004).

## I.  Background

### A.  Facts

On October 17, 2000, while driving a tractor trailer for Yellow, Plaintiff was involved in an accident that resulted in extensive damage to the tractor trailer and in serious head and spinal injuries to Plaintiff.[2]  On October 20, 2000, Yellow sent Plaintiff a letter informing him that the accident of October 17, 2000 was under investigation.  Subsequently, on October 26, 2000, Yellow discharged Plaintiff pursuant to Article 46 of the collective bargaining agreement[3] ("CBA"), *i.e.,* "recklessness resulting in serious accident while on duty."

On November 7, 2000, acting pursuant to the CBA's grievance procedure, Plaintiff filed a "local level"grievance regarding his discharge.  However, this grievance was not resolved.  Thus, on August 16, 2001, a panel of the Ohio Joint State Grievance Committee ( "OJSGC"), held a hearing on the matter.[4]

At the hearing before the OJSGC, Mr. Raver, the Union's business agent, argued that the October 17, 2000 accident was caused by equipment failure and not by any "recklessness" on the part of Plaintiff.   The police report of the incident contained the following statement made by Plaintiff:

---

[2]On October 19, 2000, Plaintiff filed a claim for workers' compensation based on the injuries he received during the accident.

[3]The terms of Plaintiff's employment were governed by the National Master Freight Agreement and the Central Region Over-the-Road Motor Freight Supplemental Agreement, collectively referred to as the collective bargaining agreement ("CBA").  Under the CBA, Yellow could only discharge Plaintiff for "just cause."  While the CBA does not define the term "just cause,"Article 46 allows for immediate discharge for "recklessness resulting in serious accident while on duty."

[4]The OJSGC is a joint labor-management arbitration panel that is composed of four representatives from unions and four representatives from employers.

> I, Gary Carter, was driving on 50 East around a quarter mile from I-79 and the trailer felt like the right side brakes locked up on me while driving between 45 and 50 miles an hour. I looked in the right mirror and the trailer was sliding going towards my right and it flipped over.

Mr. Raver also noted that, in the police report, the police officer had indicated that "the rear passenger wheel on the trailer was locked when the towing service moved tractor [and] trailer out of lanes of traffic."[5] In addition, Mr. Raver stated that both the repairs and the Public Service Commission inspection were made after the towing service had already loosened the rear wheel for towing.

Yellow, on the other hand, argued that the October 17, 2000 accident was in fact a result of Plaintiff's "recklessness." Yellow noted that the police report indicated that a contributing cause of the accident was Plaintiff's failure to maintain control of the vehicle. Yellow also countered Plaintiff's argument of equipment failure by noting that the tractor and trailer had traveled substantial distances with no problems immediately prior to the accident and that the trailer repair estimates and receipts, as well as the Public Service Commission inspection, did not indicate that there was any problem with the rear wheel or brakes on the trailer. Additionally, Yellow argued that, although a drug screening conducted after the accident was positive for some cannabinoids, Yellow did not base the termination decision on those test results.

In addition to the Union's business agent, one of the chief stewards, Mr. Hogan, also attended the OJSGC hearing. Plaintiff claims that he had concerns about Mr. Hogan attending the hearing, but admits that he did not tell either Mr. Raver or the OJSGC panel about these

---

[5]The page of the police report with this information was not included in the original report turned over to Plaintiff by Yellow and Mr. Raver made a point of this apparent "cover up" at the hearing. However, the entire police report was presented by Yellow at the OJSGC hearing.

concerns nor did he ask that Mr. Hogan not be present for the hearing.  Near the end of the

hearing, Mr. Hogan stated that Plaintiff was a third generation Teamster and a "good employee."

Because of the comment that Plaintiff was a "good employee," the Panel allowed Yellow to

briefly rebut this statement by summarizing some of Plaintiff's past disciplinary actions.[6]

The OJSGC panel ultimately denied Plaintiff's grievance and upheld his discharge.  In

concluding the hearing, the OJSGC panel asked Plaintiff whether he felt that the Union had

adequately represented him at the hearing and whether he was allowed to present all pertinent

information; he replied "yes" to both questions.

### B.  Procedural History

On October 30, 2001, Plaintiff filed a civil action in the Franklin County Court of

Common Pleas.  The amended complaint named Plaintiff's employer, Yellow; the Union; the

OJSGC; and the panelists of the OJSGC, Jack Ferrone, John Mozena, Walter Brewster, John

Baker, Dennis Weinert, David Richards, Steve Waitman and Roger Hunt.  Plaintiff asserted

claims for breach of the CBA; violation of Ohio's workers compensation anti-retaliation statute,

O.R.C. § 4123.90; breach of duty of fair representation; and a request to vacate/modify the

arbitration award, O.R.C. § 2711.10-11.

On December 12, 2001, Defendants removed the case to this Court pursuant to 28 U.S.C.

§ 1331 as a case arising under federal law.  Plaintiff did not contest this Court's exercise of

---

[6]Yellow presented a brief summary of Plaintiff's prior disciplinary actions for testing positive for cocaine in 1986 and the early 1990s, including a mandatory drug rehabilitation program that he went through in the early 1990s in order to keep his job.  In addition, Yellow noted that the drug screening conducted after the accident was positive for some cannabinoids. Finally, Yellow stated that "we feel that we cannot employ a driver that is subject to taking drugs and may get out there and kill somebody on the road."

jurisdiction. On February 12, 2002, Plaintiff was granted permission to file a second amended complaint, which added a claim of wrongful discharge in violation of Ohio's public policy.

On March 1, 2002, OJSGC and the individual panel members of OJSGC filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Court granted the motion concluding that, because the OJSGC defendants are entitled to absolute quasi-judicial immunity, the complaint fails to state a claim upon which relief can be granted with respect to those defendants. (Order (July 29, 2002)).

On May 15, 2003, Yellow moved for summary judgment. On July 26, 2004, that motion was granted in part and denied in part. (Memorandum and Order (July 26, 2004)). Initially, this Court noted that, although Plaintiff had asserted a claim for wrongful discharge in violation of public policy, Plaintiff's memorandum in opposition to Yellow's motion for summary judgment indicated that Plaintiff consented to dismissal of this claim with prejudice. This Court also concluded that Plaintiff's claim of retaliatory discharge under O.R.C. § 4123.90 was without merit because Plaintiff's notice to Yellow was untimely.

With respect to Plaintiff's claim that Yellow breached the CBA, this Court noted that Plaintiff must prove both that Yellow breached the CBA and also that the Union breached its duty of fair representation. With respect to the Union's duty of fair representation, this Court held that no reasonable jury could find that Mr. Raver's actions or failures to act constituted a breach of the Union's duty of fair representation.

However, this Court also held that a genuine issue of fact exists regarding Mr. Hogan's motive in making his "good employee" statement during the OJSGC hearing. This Court noted that, if Plaintiff can prove that Mr. Hogan acted with hostility, a reasonable jury could find that

the Union, through Mr. Hogan, acted in bad faith – one of the grounds for establishing a breach of the Union's duty of fair representation.  Additionally, this Court noted that, assuming that Plaintiff had established a breach of the Union's duty of fair representation, there is a genuine issue of material fact with respect to whether that breach undermined the grievance process.

Additionally, this Court concluded that a question of fact remains with respect to whether Plaintiff was discharged for cause, *i.e.,* whether the accident was the result of Plaintiff's "recklessness."  This Court noted that under the ordinary meaning of the word "recklessness," the factual evidence presented by Yellow at the OJSGC hearing in support of Plaintiff's recklessness was far from conclusive.  This Court therefore denied Yellow's motion for summary judgment with respect to Plaintiff's hybrid § 301 claim.

Following resolution of Yellow's motion for summary judgment, the Court set a trial date of October 18, 2004.  A Final Pretrial Conference was held on September 15, 2004.  During the Final Pretrial Conference, Yellow questioned whether there was any remedy available to Plaintiff.  Yellow argued that, because Plaintiff was "temporarily and permanently disabled," neither back-pay nor reinstatement were available remedies.  Plaintiff, however, argued that, with certain pain management procedures, Plaintiff would possibly be able to re-enter the work force within a short period of time.  In light of these positions, the Court requested additional briefing from the parties.

On the afternoon of September 15, 2004, following the Final Pretrial Conference, the parties engaged in a mediation.  The mediator met privately with each party.  According to Plaintiff, the mediator was "of the firm opinion that Mr. Carter could prove no right to monetary damages nor any right to reemployment at that time...."  (Plaintiff's Motion to Reopen, at p. 3).

While meeting with Defendants, the mediator suggested that Plaintiff be permitted to voluntarily dismiss the case with a right to refile within one year.  Counsel for Defendants rejected this proposal.  (Affidavit of James D. Kurek, at ¶ 5; Affidavit of Jerry L. Riseling, at ¶ 1).  The mediator then met with Plaintiff's counsel and made the same suggestion.  Counsel for Plaintiff allegedly indicated a willingness to accept the mediator's proposal.  However, it does not appear that the parties discussed this matter any further.  Thus, the mediation ended and the issue was left unresolved.

On September 18, 2004, Plaintiff moved to continue the scheduled trial date.  The Court granted Plaintiff's motion on October 4, 2004, moving the trial date to February 11, 2005.  On October 8, 2004, Yellow's unopposed motion to continue was granted and the trial was rescheduled for March 7, 2005.

On December 4, 2004, Plaintiff's counsel called Defendants' counsel to inquire as to whether they would agree to a stipulation of dismissal without prejudice.  Plaintiff's counsel did not, however, discuss a request to waive any applicable statute of limitations defense.  Nor did Defendants' counsel raise this issue.  After exchanging drafts, a stipulation ("Stipulation") was filed on December 8, 2004.  (Doc. # 56).  The Stipulation merely dismissed the case without prejudice, it did not purport to waive any statute of limitations defense or otherwise allow Plaintiff the right to reopen the case within one year.

Several days later, Plaintiff's counsel wrote a letter to Defendants' counsel asking them to confirm that they had agreed to waive any applicable statute of limitations defense.  (Exhibit 3-A, attached to Plaintiff's Motion to Reopen).  Counsel for Defendant Yellow responded that there was never an agreement between the parties to waive any statute of limitations defense.

(Exhibit 3-B, attached to <u>Plaintiff's Motion to Reopen</u>).  The parties could not resolve this dispute and, on February 16, 2005, Plaintiff filed his motions to reopen.

## II.  Discussion

### A.  Plaintiff's Motion to Reopen and Dismiss

In his first motion, Plaintiff asks the Court to reopen the case and immediately dismiss it without prejudice with a right to reopen before December 8, 2005.  In particular, Plaintiff suggests that the Rule 41(a)(1) Stipulation should now be construed as a Rule 41(a)(2) motion to voluntarily dismiss.  Rule 41(a) provides, in relevant part:

> **(1) By Plaintiff; by Stipulation.**  Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court ... (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action....
>
> **(2) By Order of Court.**  Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper....

Fed. R. Civ. P. 41(a).

Plaintiff argues that this case is like <u>Tomczak v. Baxter Healthcare Corp.</u>, Case No. 2:03-cv-658, (S.D. Ohio February 6, 2004), in which a Rule 41(a)(1) stipulation was allegedly construed by the Judge as a Rule 41(a)(2) motion and was granted.  Plaintiff contends that, in <u>Tomczak</u>, the Magistrate Judge orally communicated the parties' joint request for dismissal to the Judge and the Judge memorialized the dismissal accordingly.  However, unlike <u>Tomczak</u>, the parties in this case did not jointly communicate a desire to have the case dismissed without prejudice with a right to reopen the case within one year.  Instead, the parties' Stipulation merely indicates that the case was being dismissed without prejudice.  Most importantly, unlike

<u>Tomczak</u>, there is nothing in the Stipulation to even suggest that it included a right to reopen the case within one year and that, if the case was reopened, the dismissal would be of no further force and effect.

In any event, contrary to Plaintiff's suggestion, even if this Court were to construe the Stipulation as a Rule 41(a)(2) motion, such a motion would not be granted.  As was noted *supra*, Rule 41(a)(2) provides that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper...."  Fed. R. Civ. P. 41(a)(2).  "Whether dismissal should be granted under the authority of Rule 41(a)(2) is within the sound discretion of the district court."  <u>Grover v. Eli Lilly and Co.</u>, 33 F.3d 716, 718 (6th Cir. 1994).

The primary purpose of requiring court approval under Rule 41(a)(2) is to protect the non-moving party from unfair treatment.  <u>Id.</u>  Thus, a Rule 41(a)(2) motion will be denied where a non-moving defendant would suffer "plain legal prejudice" as a result of the dismissal.  <u>Id.</u> (citing <u>Cone v. West Virginia Pulp & Paper Co.</u>, 330 U.S. 212, 217 (1947)).  In determining whether a defendant would suffer "plain legal prejudice," a court should consider the following factors: (1) the amount of time, effort and expense the defendant has incurred in trial preparation; (2) any excessive delay and lack of diligence on the part of a plaintiff in prosecuting the action; (3) insufficient explanation for the need to dismiss; and (4) whether a defendant has filed a motion for summary judgment.  <u>Grover</u>, 33 F.3d at 718.

It is clear that Defendants would have opposed a Rule 41(a)(2) motion requesting that the action be dismissed without prejudice with a right to reopen the case within one year.  (<u>See</u> <u>Kurek Aff.</u> at ¶ 5; <u>Riseling Aff.</u> at ¶ 1).  Granting such a request would severely prejudice

9

Defendants by eliminating a potentially dispositive defense.  See Cross Westchester

Development Corp. v. Chiulli, 887 F.2d 431, 432 (2nd Cir. 1989) ("No authority exists ... to grant

dismissals under Rule 41(a)(2) and to order a defendant opposing such dismissal to limit its

defenses in subsequent actions").  See also Lones v. South Central Power Co., Case No. 2:04-cv-

883, 2005 WL 1309088 (S.D. Ohio May 31, 2005).

Moreover, Defendants have expended considerable time, effort and expense in preparing

for trial, which was originally scheduled to begin on October 18, 2004.[7]  Thus, even if the Court

were to reopen the case, Plaintiff's Rule 41(a)(2) motion to dismiss the case without prejudice,

with a right to reopen within one year, would not be granted.  Plaintiff's first request for relief is

therefore without merit.

### B.  Plaintiff's Motion to Supplement the Stipulation *Nunc Pro Tunc*

In his second motion, Plaintiff asks the Court to find that the Stipulation inadvertently

omitted language and to supplement it with the following language *nunc pro tunc*:

> The case may be reopened at any time within one year from the
> date of dismissal upon application of the plaintiff.  If the case is
> reopened, this dismissal shall be of no further force and effect and
> will not trigger the running of the time to refile a new case as
> provided by the Ohio Savings Statute, O.R.C. § 2305.19.

(Plaintiff's Motion to Reopen, at p. 9).  Counsel for Plaintiff argues that he intended to include

such language in the Stipulation, but inadvertently omitted the language.

*Nunc pro tunc* is defined as:

> 'Now for then.  A phrase applied to acts allowed to be done after
> the time when they should be done, with a retroactive effect, i.e.,

---

[7]As was noted *supra*, the trial date was rescheduled for February 11, 2005 and then later
rescheduled for March 7, 2005.

with the same effect as if regularly done.  *Nunc pro tunc* entry is an entry made now of something actually previously done to have effect of former date; office being not to supply omitted action, but to supply omission in record of action really had but omitted through inadvertence or mistake....'

George v. Sullivan, 909 F.2d 857, 859 n.1 (6th Cir. 1990) (quoting Black's Law Dictionary 964 (5th ed. 1979)).  *Nunc pro tunc* "is merely descriptive of the inherent power of the court to make its records speak the truth -- to record that which was actually done, but omitted to be recorded."  W.F. Sebel Co. v. Hessee, 214 F.2d 459, 462 (10th Cir. 1954).

As a general rule, a *nunc pro tunc* order may be issued "to show what was actually done but not properly or adequately recorded."  LeBeau v. Taco Bell, Inc., 892 F.2d 605, 609 n.3 (7th Cir. 1989).  See also George, 909 F.2d at 861.  However, a *nunc pro tunc* order should not be used to make substantive changes affecting parties' rights.  Transamerica Ins. Co. v. South, 975 F.2d 321, 325 (7th Cir. 1992).  "An order may be entered *nunc pro tunc* to make the record speak the truth but it cannot supply an order which in fact was not previously made."  Crosby v. Mills, 413 F.2d 1273, 1277 (10th Cir. 1969).  See also United States v. Daniels, 902 F.2d 1238, 1240 (7th Cir.) ("A judge may correct a clerical error at any time ....  But he may not rewrite history"), cert. denied, 498 U.S. 981 (1990).

Plaintiff asks the Court to insert language into the Stipulation *nunc pro tunc* that would prevent Defendants from asserting a statute of limitations defense if Plaintiff chose to reopen the case within one year.  Adding such language, however, would not make the record more accurate.  Instead, such an addition would misrepresent the agreement that was actually reached by the parties.  Defendants have consistently asserted that they would have never agreed to waive a statute of limitations defense.  Therefore, Plaintiff's second request for relief is without

merit.

### C.  Plaintiff's Motion Pursuant to Rules 60 and 61

Finally, Plaintiff requests that the Court grant relief pursuant to Rule 60 and/or Rule 61 of

the Federal Rules of Civil Procedure.  Plaintiff specifically requests that the Stipulation be set

aside due to the mistaken belief of Plaintiff's counsel that the parties had agreed that Plaintiff

would be permitted to reopen the case within one year.

### 1.  Fed. R. Civ. P. 60

Rule 60 provides, in relevant part:

> **(a) Clerical Mistakes.**  Clerical mistakes in judgments, orders or
> other parts of the record and errors therein arising from oversight
> or omission may be corrected by the court at any time of its own
> initiative or on the motion of any party and after such notice, if any
> as the court orders....
>
> **(b) Mistakes; Inadvertence; Excusable Neglect; Newly
> Discovered Evidence; Fraud, Etc.**  On motion and upon such
> terms as are just, the court may relieve a party or a party's legal
> representative from a final judgment, order, or proceeding for the
> following reasons: (1) mistake, inadvertence, surprise, or
> excusable neglect; (2) newly discovered evidence which by due
> diligence could not have been discovered in time to more for a new
> trial under Rule 59(b); (3) fraud ... misrepresentation, or other
> misconduct of an adverse party; (4) the judgment is void; (5) the
> judgment has been satisfied, released, or discharged, or a prior
> judgment upon which it is based has been reversed or otherwise
> vacated, or it is no longer equitable that the judgment should have
> prospective application; and (6) any other reason justifying relief
> from the operation of the judgment.  The motion shall be made
> within a reasonable time, and for reasons (1), (2), and (3) not more
> than one year after the judgment, order, or proceeding was entered
> or taken ....

Fed. R. Civ. P. 60.

### a.  Fed. R. Civ. P. 60(a)

Plaintiff argues that the Court should set aside the Stipulation pursuant to Rule 60(a). Rule 60(a) is much like a request *nunc pro tunc*, it can only be used to correct clerical errors or omissions.  Pruzinsky v. Gianetti (In re Walter), 282 F.3d 434, 440 (6th Cir.), cert. denied, 537 U.S. 885 (2002).  "[A] court properly acts under Rule 60(a) when it is necessary to 'correct mistakes or oversights that cause the judgment to fail to reflect what was intended at the time of trial.'" Pruzinsky, 282 F.3d at 441 (quoting Vaughter v. Eastern Air Lines, Inc., 817 F.2d 685, 689 (11th Cir. 1987)).  Thus, Rule 60(a) cannot be used to change what the parties originally agreed upon.

In this case, as was discussed *supra*, adding the requested language to the Stipulation would not reflect the true agreement of the parties.  In fact, Defendants have made clear that they oppose a dismissal with a right to reopen within one year.  Thus, including such a condition in the Stipulation would fundamentally alter the Stipulation that Defendants agreed to.  Rule 60(a) cannot be used under these circumstances.  Therefore, Plaintiff's request, pursuant to Rule 60(a) is without merit.

**b. Fed. R. Civ. P. 60(b)(1)**

Plaintiff also argues that the Court should set aside the Stipulation pursuant to Rule 60(b)(1).  As was noted *supra*, a "court may relieve a party or a party's representative from a final judgment, order, or proceeding for ... mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).  Plaintiff bears the burden of establishing the existence of mistake, inadvertence, surprise or excusable neglect under Rule 60(b)(1).  See Jinks v. Alliedsignal, Inc., 250 F.3d 381, 385 (6th Cir. 2001).  Moreover, as the Rule indicates, the Court has some discretion in determining whether to grant such relief.  See McCurry v. Adventist Health

13

System/Sunbelt, Inc., 298 F.3d 586, 592 (6th Cir. 2002).

Plaintiff's counsel specifically argues that he "honestly believed that defense counsel were agreeing to waive the statute [of limitations] when they agreed to the Stipulation, Without Prejudice."  (Plaintiff's Reply, at p. 3).  Plaintiff contends that this mistake should be considered excusable neglect.  As the Supreme Court recognized in Pioneer Investment Services Co. v. Brunswick Assocs., 507 U.S. 380, 388 (1993), neglect encompasses "simple, faultless omissions to act" as well as "omissions caused by carelessness."[8]

The mere fact that the conduct of Plaintiff's counsel may be classified as neglect does not end the inquiry.  Plaintiff must also establish that such neglect was excusable.  The determination of whether neglect was excusable is an equitable determination that takes into account all relevant circumstances surrounding the party's omission.  Pioneer, 570 U.S. at 395; Jinks, 250 F.3d at 386.  The Court should consider the following factors: (1) the danger of prejudice to the other party, (2) the length of delay, (3) its potential impact on judicial proceedings, (4) the reason for the delay, and (5) whether the movant acted in good faith. Pioneer, 570 U.S. at 395; Jinks, 250 F.3d at 386.

Plaintiff's counsel states that he "honestly believed that defense counsel were agreeing to waive the statute [of limitations] when they agreed to the Stipulation, Without Prejudice." (Plaintiff's Reply, at p. 3).  However, the evidence in the record does not support an objectively reasonable belief that the parties had specifically agreed to allow Plaintiff to reopen the case

---

[8]Although Pioneer discussed the word "excusable neglect" in the context of Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure, the Sixth Circuit Court of Appeals has specifically applied Pioneer's reasoning to Rule 60(b) of the Federal Rules of Civil Procedure. See Jinks, 250 F.3d at 385.

within one year.  While the mediator discussed the option of dismissing with a right to reopen within one year, the mediator spoke individually with each party.  There is nothing to suggest that Defendants indicated a willingness to allow Plaintiff to dismiss without prejudice with a right to reopen within one year.[9]  Nor is there any evidence that the mediator made any representation to Plaintiff's counsel that would affirmatively indicate that Defendants had agreed to a stipulation without prejudice with a right to reopen within one year.  Instead, the belief of Plaintiff's counsel appears to be based on pure supposition.

Moreover, the parties left the mediation without a settlement of the case.  If Defendants had agreed to the mediator's proposal, as Plaintiff's counsel allegedly assumed, there would appear to be no reason why the case would not have been settled at that time.  Instead, after waiting nearly two months, Plaintiff's counsel then submitted a stipulation to Defendants.  At no point did Plaintiff's counsel propose a dismissal without prejudice with a right to reopen within one year.  Nor did Defendants' counsel ever suggest such an option.  To the contrary, Defendants repeatedly insisted on proceeding with trial as soon as possible.  Therefore, there does not appear to be any factual basis for a reasonable belief that the parties had come to an agreement that would allow Plaintiff to dismiss without prejudice with a right to reopen within one year.

Even assuming that Plaintiff's counsel believed that the parties had agreed to allow Plaintiff to dismiss the case without prejudice with a right to reopen the case within one year, there is no viable explanation as to why such a clause was not included in the Stipulation.  As the Sixth Circuit has recognized, a dismissal without prejudice does not toll a statute of limitations.

---

[9]In fact, the record reflects that Defendants actually rejected the mediator's proposal.

15

See Wilson v. Grumman Ohio Corp., 815 F.2d 26, 28 (6th Cir. 1987) (citing Bomer v. Ribicoff, 304 F.2d 427, 428-29 (6th Cir.1962)).  Thus, "[i]n the absence of a statute to the contrary a party cannot deduct from the period of the statute of limitations the time during which the action so dismissed was pending."  Bomer, 304 F.2d at 429 (citations omitted).

In this case, the relevant statute of limitations expired while the case was pending.[10] Thus, if Plaintiff wanted the right to reopen the case without regard to the statute of limitations, such a right had to be set forth in the Stipulation.  The failure to do so in the proposed stipulation may well have been simply an inadvertent omission and, indeed, the fact that Plaintiff's counsel – several days after the Stipulation had been filed – requested a written confirmation of an agreement to waive a statute of limitations defense would seem to support such a conclusion.

In any event, the failure to make this proposal in the conversations with defense counsel regarding a dismissal or to include it in a draft of the proposed stipulation cannot be considered "excusable" neglect or justify the Court to rewrite the only agreement reached by the parties, *i.e.,* to dismiss the action without prejudice to filing another action based on the same claims at some date in the future.  "[A]n attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment."  Nemaizer v. Baker, 793 F.2d 58, 62 (2nd Cir. 1986).  See also McCurry, 298 F.3d at 593; FHC Equities, L.L.C. v. MBL Life Assurance Corp., 188 F.3d 678, 683-87 (6th Cir. 1999); Deran Marketing Corp. v. Fisher Foods, Inc., No. 84-3527, 1986 WL 1665, *4 (6th Cir. March 27, 1986).

The Sixth Circuit addressed a similar situation of attorney omission in Jinks.  In Jinks,

---

[10]As Plaintiff acknowledges, a Hybrid 301 claim has a six-month statute of limitations. (See Plaintiff's Reply at p. 2).  See also DelCostello v. Int'l. Brotherhood of Teamsters, 462 U.S. 151, 165 (1983).

16

the plaintiffs failed to raise certain issues in response to defendant's motion for summary

judgment.  The plaintiffs sought to use Rule 60(b)(1) to set aside the judgment and to supplement

their response.  The court noted that the plaintiffs' position would force a district court to

"address claims of 'excusable neglect' each time a party forgets to raise a particular legal theory

or defense at any stage in the proceeding, or neglects to file evidence that would provide a

factual basis for a claim."  Jinks, 250 F.3d at 386.  The Court held that "[s]uch a rule would

cause great uncertainty and dely in the disposition of cases" and denied the plaintiffs' request for

relief under Rule 60(b)(1).  Id.  See also McCurry, 298 F.3d at 592 ("relief under Rule 60(b) is

circumscribed by public policy favoring finality of judgments and termination of litigation")

(quoting Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefit Fund, 249 F.3d 519,

524 (6th Cir.), cert. denied, 534 U.S. 1054 (2001)).

The Court also notes that Plaintiff's counsel attempts to shift the blame for omitting

language from the Stipulation to Defendants' counsel.  In Plaintiff's reply, Plaintiff's counsel

notes that Defendants' counsel have years of experience litigating Hybrid 301 claims and are

well aware of the six-month statute of limitations.  Plaintiff's counsel suggests that Defendants'

counsel should have clarified the meaning of the proposed Stipulation without prejudice.

Plaintiff's counsel goes so far as to suggest that Defendants' counsel "maintained silence and

apparently hoped their prey would walk into a trap they could exploit later."  (Plaintiff's Reply,

at p. 2).  This reasoning reflects, more than anything, a misunderstanding of the law regarding

stipulations of dismissal without prejudice.  In any event, as this Court has previously

recognized, counsel for a defendant does not have a duty to warn counsel for a plaintiff of the

legal implications of filing voluntary notices of dismissal.  See Ater v. Follrod, 238 F. Supp. 2d

17

928, 945 (S.D. Ohio 2002).  Thus, the attempt to shift the blame for the omission to Defendants' counsel is unavailing.

This Court therefore concludes that Plaintiff has failed to satisfy his burden of establishing excusable neglect.  Plaintiff's request for relief under Rule 60(b)(1) is therefore without merit.

### 2.  Fed. R. Civ. P. 61

Finally, Plaintiff requests relief pursuant to Rule 61 of the Federal Rules of Civil Procedure.  Rule 61 provides in relevant part:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or ... for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.

Fed. R. Civ. P. 61.  Similar to a Rule 60(b) motion, when deciding a Rule 61 motion, a court should consider all relevant circumstances surrounding the alleged error.  See 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2883 (2d ed. 1995).

Plaintiff argues that the mistake of his counsel in failing to include a right to reopen the case in the Stipulation (not just a right to refile a new action) was harmless error that can be corrected under Rule 61.  In support of this position, Plaintiff relies on the same arguments used to support Plaintiff's request for relief under Rule 60(b).  While it is clear that denying Plaintiff's motion may adversely affect Plaintiff, it is equally clear that granting Plaintiff's motion may adversely affect Defendants.  Thus, the appropriate question is who should bear the consequences of the omission in the Stipulation that was proposed by Plaintiff's counsel.

18

The Supreme Court has addressed this issue and has rejected the contention that the dismissal of a party's claim due to the unexcused conduct of the party's counsel is an unjust penalty.  Link, 370 U.S. at 633.  Instead, the Supreme Court explained:

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omission of this freely selected agent.  Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'

Link, 370 U.S. at 633-34 (quoting Smith v. Ayer, 101 U.S. 320, 326 (1880)).

This Court cannot conclude that the denial of Plaintiff's motion is inconsistent with substantial justice.  Plaintiff's request for relief under Rule 61 is therefore without merit.

**WHEREUPON**, Plaintiff's motions to reopen and dismiss the case or, alternatively, for a dismissal entry *nunc pro tunc* or, alternatively, for relief under Rules 60 and/or 61 of the Federal Rules of Civil Procedure (Doc. # 57) are **DENIED**.

**IT IS SO ORDERED.**

February 3, 2006                                    /s/ John D. Holschuh
                                                    John D. Holschuh, Judge
                                                    United States District Court

19